IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**BRENDEN JAMES**

        **Petitioner,**

        v.                                                                              **CV 11-505 JP/LAM**

**ERASMO BRAVO, et al.,**

        **Respondents.**

## **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**[1]

**THIS MATTER** is before the Court on Petitioner Brenden James' 28 U.S.C. § 2254 petition [*Doc. 1*], filed June 9, 2011. Mr. James is incarcerated and proceeding *pro se*. Respondents filed their answer to the petition on July 21, 2011. [*Doc. 6*]. United States District Judge James A. Parker referred the claims raised in the petition to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary. [*Doc. 3*]. Having considered the parties' submissions, relevant law, and the record in this case, the undersigned recommends, for the reasons set forth below, that Mr. James' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be **DISMISSED with prejudice**.

Because the issues in this case can be resolved on the record before the Court, the Court **FINDS** that an evidentiary hearing is unnecessary. *See Anderson v. Attorney General of Kansas*,

---

[1]**Within fourteen (14) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court for the District of New Mexico within the fourteen (14) day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

425 F.3d 853, 858-59 (10th Cir. 2005) (evidentiary hearing unnecessary if § 2254 habeas claim can be resolved on the record).

In his petition, Mr. James claims that his constitutional rights were violated because the trial court in his state criminal case refused to allow a voluntary manslaughter jury instruction. [*Doc. 1* at 5]. Mr. James does not state what relief he is seeking from the Court. *Id.* at 15.

### *I. Procedural Background*

On October 10, 2008, following a jury trial, Mr. James was found guilty of the offense of Second Degree Murder, a second-degree felony resulting in the death of a human being, in violation of N.M.S.A. 1978 § 30-2-1(B). [*Doc. 6-1*, Exhibit A at 1] (Judgment, Order and Commitment to the Corrections Department entered in the state district court). On December 15, 2008, Mr. James was sentenced to a total term of fifteen years followed by two years on parole and the offense is classified as a serious violent offense pursuant to N.M.S.A. 1978 § 33-2-34. *Id.* Mr. James received pre-sentence confinement credit of five hundred and fifty-seven days, as well as post-sentence confinement served prior to Mr. James' transfer to the New Mexico Department of Corrections. *Id.* at 2.

On January 13, 2009, Mr. James appealed his conviction to the New Mexico Court of Appeals and filed his Docketing Statement on February 12, 2009. [*Doc. 6-1*, Exhibits B (Notice of Appeal) and C (Docketing Statement)]. The New Mexico Court of Appeals entered a proposed summary affirmance on March 4, 2009 ([*Doc. 6-1*, Exhibit D]), and a memorandum opinion on July 30, 2009, affirming Mr. James' conviction ([*Doc. 6-1*, Exhibit F]). On August 10, 2009, Mr. James filed a petition for a writ of certiorari with the New Mexico Supreme Court regarding his direct appeal. [*Doc. 6-1*, Exhibit G]. On September 2, 2009, the New Mexico Supreme Court denied Mr. James' petition for writ of certiorari. [*Doc. 6-1*, Exhibit H].

On April 20, 2010, Mr. James filed a motion for reconsideration of his sentence with the state district court ([*Doc. 6-1*, Exhibit J]), which was denied on May 11, 2010 ([*Doc. 6-1*, Exhibit M]). On June 9, 2010, Mr. James appealed the denial of his motion for reconsideration of his sentence to the New Mexico Court of Appeals. [*Doc. 6-1*, Exhibits M-1 (Notice of Appeal) and N (Docketing Statement)]. The New Mexico Court of Appeals entered a proposed summary affirmance on August 30, 2010 ([*Doc. 6-1*, Exhibit O]), and, on October 25, 2010, entered a memorandum opinion affirming the state district court's denial of Mr. James' motion for reconsideration of his sentence ([*Doc. 6-1*, Exhibit Q]). On November 22, 2010, Mr. James filed a petition for writ of certiorari with the New Mexico Supreme Court regarding the New Mexico Court of Appeals' decision affirming his motion for reconsideration of his sentence ([*Doc. 6-2*, Exhibit R]), which was denied on January 3, 2011 ([*Doc. 6-2*, Exhibit S]). On June 9, 2011, Mr. James filed is Section 2254 petition, initiating this proceeding. [*Doc. 1*].

## *II. Mr. James' Section 2254 Claim*

As previously stated, Mr. James claims that his constitutional rights were violated because the trial court in his state criminal case refused to allow a voluntary manslaughter jury instruction. [*Doc. 1* at 5]. In their response, Respondents submit that Mr. James has exhausted his claim "on direct appeal in the New Mexico Court of Appeals and raised before the New Mexico Supreme Court in a petition for writ of certiorari." [*Doc. 6* at 6]. Respondents contend, however, that the petition should be dismissed because Mr. James fails to show that the state court proceedings either resulted in a decision that was contrary to, or involved an unreasonable application of, federal law, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Id.* at 7. Respondents further assert that Mr. James has not offered clear and convincing evidence to overcome the presumption of

correctness applied to the state court's factual determinations pursuant to 28 U.S.C. § 2254(e)(1). *Id.* Respondents ask the Court to dismiss the petition. *Id.* at 9.

"Pro se pleadings are to be construed liberally." *Sines v. Wilner*, 609 F.3d 1070, 1074 (10th Cir. 2010) (citation omitted). Despite liberal construction of a *pro se* litigant's pleadings, however, courts cannot "assume the role of advocate" for him. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted); *see also Northington v. Jackson*, 973 F.2d 1518, 1520–21 (10th Cir. 1992) (citation omitted). Courts "are not required to fashion Defendant's arguments for him where his allegations are merely conclusory . . . and without supporting fact[s]." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (citation omitted). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." *Hall*, 935 F.2d at 1110 (citations omitted). Because Mr. James is a *pro se* litigant, the Court construes his allegations in his petition liberally.

### *III. Exhaustion of State Court Remedies*

A state prisoner must generally exhaust available state court remedies before a federal court can consider the prisoner's habeas petition under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(b)(1)(A); *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002). The exhaustion requirement is considered satisfied "if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a postconviction attack." *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994) (citation omitted). The Tenth Circuit has held that a state prisoner does not fully exhaust state remedies without timely seeking certiorari review with the state supreme court. *Barnett v. LeMaster*, 167 F.3d 1321, 1323 (10th Cir. 1999). Respondents state that Mr. James has exhausted the claim raised in his petition because it was raised in his direct appeal and Mr. James filed a petition for certiorari review by the New Mexico Supreme Court in that

proceeding. [*Doc. 6* at 6]. The Court agrees that Mr. James' claim has been exhausted because it was raised on direct appeal and Mr. James sought and was denied review of his direct appeal by the New Mexico Supreme Court. [*See Doc. 6-1*, Exhibits C, F, G, and H]. The Court will, therefore, proceed to consider the claim on the merits.

### IV.  Claim That Trial Court Erred by Not
### Allowing Voluntary Manslaughter Jury Instruction

#### A.  Facts

On May 31, 2007, Mr. James and three other men spent the evening cruising around, drinking alcohol and smoking marijuana. [*Doc. 6-1*, Exhibit E at 18]. At around 11:00 p.m., they went to a woman's apartment. *Id.* Mr. James and two of the men left the apartment and called up to the fourth man, Kevin Begay, to hurry up. *Id.* at 18-19. "As Mr. Begay came down the stairs of the apartment, Mr. James jumped from the rear of passenger side of the car and ran toward Mr. Begay, suddenly pointed a gun at him and fired from a few inches away into his cheek area." *Id.* at 19 (citing the Docketing Statement filed in Mr. James' direct appeal, *Doc. 6-1*, Exhibit C at 10). At his trial, "Mr. James testified that Mr. Begay always carried a knife with him and was prone to blackouts and violence when he was wasted[, and that a]s Mr. James approached him, Mr. Begay grabbed Mr. James' shirt with his right hand and struck Mr. James in the forehead with his left hand." [*Doc. 6-1*, Exhibit E at 19]. Mr. James testified that he reached for his gun with the intention of using it to hit Mr. Begay with it, but, instead, he shot and killed him. *Id.* Mr. James further testified that Mr. Begay was substantially taller and heavier than Mr. James, and "that he shot Mr. Begay because he was afraid that Mr. Begay was gong to beat him up." *Id.*

Dr. Ross Zumwalt, of the Office of the Medical Investigator, performed the autopsy on Mr. Begay, and testified at Mr. James' trial that the autopsy revealed a smudge of what appeared

to be soot from the shot on Mr. Begay's inner, upper, left arm. *Id.* "Dr. Zumwalt also testified that Mr Begay's arm could have been raised in a defensive manner before his face, or his arm could have been raised in an aggressive manner preparing to strike Mr. James. Dr. Zumwalt could not say to any degree of medical certainty how Mr. Begay's arm was raised just prior to his death." *Id.* at 19-20. At the end of the trial, Mr. James' counsel proposed a jury instruction on voluntary manslaughter, arguing that Dr. Zumwalt's testimony that Mr. Begay's arm could have been raised in an aggressive manner, along with Mr. James testimony that he thought Mr. Begay was going to hit him just be fore he shot Mr. Begay, would allow a reasonable jury to find that Mr. James was sufficiently provoked by Mr. Begay so that Mr. James could be convicted of voluntary manslaughter. *Id.* at 21. "The trial court refused to issue the instruction, [and] the jury was instructed on the elements of first and second degree murder." *Id.* Mr. James contends that his constitutional rights were violated because the trial court refused to allow the voluntary manslaughter jury instruction. [*Doc. 1* at 5].

### *B. Standard of Review*

The provisions of 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, 110 Stat. 1214 (hereinafter, "AEDPA"), govern this case. The Court cannot grant Mr. James habeas relief pursuant to 28 U.S.C. § 2254(d) unless the decision in his state court proceeding (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1)–(2). The United States Supreme Court has construed these statutory provisions, and established rules for applying them, in a series of cases decided since the enactment of AEDPA. *See, e.g., Cullen v. Pinholster*, 131 S.Ct. 1388 (2011); *Berghuis v.*

*Thompkins*, 130 S.Ct. 2250 (2010); *Wright v. Van Patten*, 552 U.S. 120 (2008); *Fry v. Pliler*, 551 U.S. 112 (2007); *Bell v. Cone*, 543 U.S. 447 (2005) (per curiam); *Mitchell v. Esparza*, 540 U.S. 12 (2003) (per curiam); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Lockyer v. Andrade*, 538 U.S. 63 (2003); *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam); *Early v. Packer*, 537 U.S. 3 (2002) (per curiam); *Ramdass v. Angelone*, 530 U.S. 156 (2000); *Williams v. Taylor*, 529 U.S. 362 (2000).

The phrase "clearly established Federal law, as determined by the Supreme Court of the United States" in 28 U.S.C. § 2254(d)(1), "'refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision.'" *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" United States Supreme Court precedent "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision is also "contrary to" Supreme Court precedent "if the state court decides [the] case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* However, a state court decision is not "contrary to" Supreme Court precedent "simply because the court did not cite [Supreme Court] opinions. [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)). *See also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (noting presumption that state courts know and follow the law); *Miller v. Mullin*, 354 F.3d 1288, 1292-93 (10th Cir. 2004) (AEDPA applicable notwithstanding state court's failure to cite or discuss federal case law). The deferential AEDPA standard of review applies to habeas claims that were adjudicated on the merits in state court

proceedings. *See* 28 U.S.C. § 2254(d). Indeed, a state court need not even discuss the federal law applicable to a claim in order for AEDPA standards to apply. So long as the state court does not dismiss a claim on procedural grounds, a federal court applies the AEDPA standards regardless of whether there is any reasoning supporting the "decision." *See Cook v. McKune*, 323 F.3d 825, 830–31 (10th Cir. 2003); *see also Chadwick v. Janecka*, 312 F.3d 597, 606 (3d Cir. 2002) (discussing that in *Weeks v. Angelone*, 528 U.S. 225 (2000), the Supreme Court applied AEDPA standards of review to a claim the state court dismissed summarily without any explanation of how it reached its decision). Moreover, if a state court's decision does not conflict with the reasoning or the holdings of Supreme Court precedent, the decision is not "contrary to" such precedent under 28 U.S.C. §2254(d)(1) simply because the federal court holds a different view where Supreme Court precedent "is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). If a state court decides a claim on the merits in summary fashion, the AEDPA standards still apply, but the focus is on the state court's results rather than any reasoning. *See Stevens v. Ortiz*, 465 F.3d 1229, 1235 (10th Cir. 2006).

     Under 28 U.S.C. § 2254(d)(1), a state court decision involves an "unreasonable application" of Supreme Court precedent if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). However, "a federal habeas court may not issue [a writ of habeas corpus] simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer v. Andrade*, 538 U.S. at 75–76 (2003) (internal quotations and citations omitted). "Rather, that application must be objectively unreasonable." *Id.* at 76. A state court cannot be said to have "unreasonabl[y] appli[ed] clearly established Federal law," under 28 U.S.C. § 2254(d)(1), if no

Supreme Court decision provides a clear answer to a question presented in the state court. *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (citing *Carey v. Musladin*, 549 U.S. 70, 77 (2006)).

Under 28 U.S.C. §§ 2254(d)(2) and (e)(1), a state court decision is based on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding" only if it is shown by "clear and convincing evidence" that the factual finding is incorrect. *See Wiggins v. Smith*, 539 U.S. 510, 528 (2003).

### *C. Analysis*

Mr. James' claim was considered on the merits by the state courts and, as such, the Court applies the deferential AEDPA standard of review and may reverse only if the state courts' holdings were "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1), as explained in Section IV.B. *supra*. On Mr. James' direct appeal, the New Mexico Court of Appeals held that the evidence did not support a voluntary manslaughter jury instruction. [*Doc. 6-1*, Exhibit F at 29]. Specifically, the New Mexico Court of Appeals explained that, "[i]n order to support a voluntary manslaughter instruction, the evidence would have to support a jury finding that [Mr. James] had been sufficiently provoked." *Id.* (citing New Mexico Uniform Jury Instruction (hereinafter "NM-UJI") 14-220). Further, the appellate court explained that "[s]ufficient provocation is defined as 'any action, conduct or circumstances which arouse anger, rage, fear, sudden resentment, terror or other extreme emotions,'" and "'[t]he provocation must be such as would affect the ability to reason and to cause a temporary loss of self control in an ordinary person of average disposition.'" *Id.* (quoting NM-UJI 14-222). The New Mexico Court of Appeals found that, even though there was evidence (from Mr. James' testimony and an inference from Dr. Zumwalt) to indicate that Mr. Begay might have struck Mr. James with his hand, it would not be rational for a jury to find that Mr. James was sufficiently provoked such that a voluntary

manslaughter instruction was warranted. *Id.* (citing *State v. Stills*, 1998-NMSC-009, ¶¶ 12, 40, 125 N.M. 66, 957 P.2d 51 (evidence that the victim pushed the defendant and threatened to have him killed was not sufficient to require a voluntary manslaughter jury instruction).

The Tenth Circuit has held that "[a]s a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, unless they are so fundamentally unfair as to deprive [the] petitioner of a fair trial and [] due process of law." *Tyler v. Nelson*, 163 F.3d 1222, 1227 (10th Cir. 1999) (citations and internal quotation marks omitted). *See also Brinlee v. Crisp*, 608 F.2d 839, 854 (10th Cir. 1979) ("Habeas proceedings may not be used to set aside a state conviction on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense."), and *Campbell v. Williams*, No. 02-2236, 66 Fed. Appx. 170, 172-73, 2003 WL 21061359 (10th Cir. May 13, 2003) (unpublished) (same). For a defendant to be entitled to an instruction on voluntary manslaughter under New Mexico law, the defendant must show that there is "sufficient evidence that the provocation was such as to cause a temporary loss of self control in an ordinary person of average disposition." *State v. Taylor*, 2000-NMCA-072, ¶ 27, 129 N.M. 376, 8 P.3d 863 (citation and internal quotation marks omitted). Mr. James provides no support that the evidence that Mr. Begay may have hit Mr. James, and that Mr. Begay had a reputation for beating people up, required the trial court to allow a voluntary manslaughter jury instruction, and a state court decision rejecting this claim does not violate federal law. *See, e.g., Stills v. Dorsey*, No. 00-2475, 7 Fed. Appx. 856, 860, 2001 WL 303351 (10th Cir. March 29, 2001) (unpublished) (upholding trial court's decision that evidence that the defendant and victim argued, that the victim pushed and swore at the defendant, and the victim told the defendant she would have the defendant killed, was insufficient to show the necessary provocation for a voluntary

manslaughter instruction). For the foregoing reasons, the Court concludes that the state court decision rejecting Mr. James' claim that the state trial court should have allowed a voluntary manslaughter jury instruction is not contrary to federal law, and Mr. James' claim should be denied.

### *VI. Conclusion*

For the foregoing reasons, the Court finds that Mr. James has failed to establish that the adjudication of his claim on the merits in the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. §§ 2254(d)(1)-(2). Therefore, the Court recommends that this case be dismissed with prejudice and that Mr. James' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be denied.

### RECOMMENDED DISPOSITION

For the foregoing reasons, the undersigned recommends that Mr. James' *Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. 1)* be **DENIED**, and that this case be **DISMISSED WITH PREJUDICE**.

*Lourdes A. Martínez*
**HONORABLE LOURDES A. MARTÍNEZ**
**United States Magistrate Judge**